DECISION AND JUDGMENT ENTRY
{¶ 1} This case is before the court on appeal from the Lucas County Court of Common Pleas, Juvenile Division, which entered a judgment granting permanent custody of My'kavellie E. to Lucas County Children's Services ("LCCS"). Prior to the court's permanent custody award to LCCS, My'kavellie's alleged father, appellant Manley E., *Page 2 
was dismissed from the action. For the reasons that follow, we reverse the trial court's judgment dismissing appellant.
 {¶ 2} On July 24, 2006, LCCS filed a complaint in dependency and neglect and a motion for a shelter care hearing. The complaint alleged that at the time of his birth, My'kavellie tested positive for cocaine and that his mother admitted to using crack cocaine throughout her pregnancy. The complaint stated that the alleged father was either appellant or Steven S. The shelter care hearing was held on the same date and temporary custody was awarded to LCCS. Appellant was served with notice of the hearing but was unable to attend due to his incarceration at Toledo Correctional Institution ("TCI") for criminal non-support; appellant's appointed counsel did attend. Counsel agreed to genetic testing although he indicated that he had not yet had an opportunity to speak with appellant. Also at the hearing, My'kavellie's mother, Whitney B., requested that My'kavellie's surname be changed to appellant's; My'kavellie's name was changed without objection.
 {¶ 3} On August 30, 2006, an adjudication hearing was held; My'kavellie was adjudicated a dependent and neglected child. Temporary custody was awarded to LCCS. Alleged father, Steve S., was ordered to undergo genetic testing. At the hearing, appellant's counsel stated that appellant was not consenting to an adjudication or disposition and that appellant was not interested in surrendering his parental rights.
 {¶ 4} On November 6, 2006, a hearing was held to address a letter sent by appellant expressing his dissatisfaction with his attorney. Appellant's attorney stated: *Page 3 
 {¶ 5} "My client sent a letter dated September 14, 2006, in which he was complaining about a lack of correspondence and communication from myself, the Court and CSB.
 {¶ 6} "He also stated that he was concerned because he had sent a letter to the Court previously to both me, the Court and to CSB, that was notarized claiming that he was the father of the child, he was — wished to become the legal father and did not want to go through genetic testing or have the other alleged father genetically tested as well.
 {¶ 7} "He says in essence that he has not the ability to start services or know what service he needs to begin and that's the information that he provided to me, and he's very upset about this.
 {¶ 8} "However, I can inform the Court at this time period that I did inform him fully that his obligation, if he wanted to become the legal father was to get genetic testing.
 {¶ 9} "He was quite agitated about that fact. I have had at least two telephone conversations with him, I think possibly a third one. But I'm going to stick with two because that is the only two I can totally recall. And in those conversations, I informed him of what happened at the adjudication."
 {¶ 10} The trial court then orally dismissed appellant based on his failure to submit to genetic testing. Steve S. was also dismissed because the genetic testing determined that he was not My'kavellie's father. The order was journalized on November 15, 2006. *Page 4 
 {¶ 11} On March 28, 2007, permanent custody of My'kavellie was awarded to LCCS. This appeal followed.
 {¶ 12} Appellant now presents five assignment of error for our review:
 {¶ 13} "A. The trial court erred by failing to hold a paternity hearing before dismissing appellant as a mere `alleged father,' in violation of appellant's constitutional due process rights.
 {¶ 14} "B. The trial court erred by neglecting to provide appellant his due process right to obtain judgment on his affidavit acknowledging paternity.
 {¶ 15} "C. The trial court erred in dismissing appellant as a party to the action because the evidence was insufficient to support a finding that appellant was merely an alleged father.
 {¶ 16} "D. The trial court violated defendant's constitutional right to free exercise of religion by unnecessarily making mandatory DNA/blood testing the sole proof of paternity.
 {¶ 17} "E. Appellant's court-appointed counsel was ineffective as below the objective standard of reasonableness and greatly prejudiced defendant-appellant."
 {¶ 18} For ease of discussion, we will address appellant's assignments of error in numerical, rather than alphabetical, order. In appellant's first assignment of error, he argues that the trial court violated his due process rights by dismissing appellant from the proceeding without first conducting a paternity hearing. We first note that parents have a fundamental liberty interest in the care, custody and management of their children. *Page 5 Santosky v. Kramer (1982), 455 U.S. 745, 102 S.Ct. 1388, 71 L.Ed.2d 599;In re Murray (1990), 52 Ohio St.3d 155, 157. Therefore, in a permanent custody proceeding, "parents must be provided with fundamentally fair procedures in accordance with the Fourteenth Amendment Due Process Clause and Section 16, Article I of the Ohio Constitution." In theMatter of Elliot (June 25, 1993), 4th Dist. No. 92-CA-34. See, also,In the Matter of Vandale (June 29, 1993), 4th Dist. No. 92-CA-31.
 {¶ 19} Unlike LCCS's assertion, we do not believe that due process of law applies only to those parties who have established parentage; however, we agree that the level of protection correlates to the actions of the alleged parent. As this court has noted: "The fundamental requirement of due process is an opportunity to be heard at a meaningful time and in a meaningful manner." In the Matter of Aaron Jones (Mar. 31, 1992), 6th Dist. No. L-91-204, citing Mathews v. Eldridge (1976),424 U.S. 319, 313, 96 S.Ct. 893, 47 L.Ed.2d 18. In Aaron Jones, we also quoted the United States Supreme Court's decision in Lehr v.Robertson (1983), 463 U.S. 248, 261-262, 103 S.Ct. 2985, 77 L.Ed.2d 614
which, in discussing three landmark cases, noted:
 {¶ 20} "The difference between the developed parent-child relationship that was implicated in Stanley and Caban, and the potential relationship involved in Quilloin and this case, is both clear and significant. When an unwed father demonstrates a full commitment to the responsibilities of parenthood by `com[ing] forward to participate in the rearing of his child,' Caban, 441 U.S., at 392, 99 S.Ct., at 1768, his interest in personal contact with his child acquires substantial protection under the due process *Page 6 
clause. At that point it may be said that he `act[s] as a father toward his children.' Id., at 389, n. 7, 99 S.Ct, at 1766, n. 7. But the mere existence of a biological link does not merit equivalent constitutional protection. The actions of judges neither create nor sever genetic bonds. `[T]he importance of the familial relationship, to the individuals involved and to the society, stems from the emotional attachments that derive from the intimacy of daily association, and from the role it plays in "promoting] a way of life" through the instruction of children as well as from the fact of blood relationship.' Smith v.Organization of Foster Families for Equality and Reform, 431 U.S. 816,844, 97 S.Ct. 2094, 2109-2110, 53 L.Ed.2d 14 (1977) (quotingWisconsin v. Yoder, 406 U.S. 205, 231-233, 92 S.Ct. 1526, 1541-1542,32 L.Ed.2d 15 (1972)).
 {¶ 21} "The significance of the biological connection is that it offers the natural father an opportunity that no other male possesses to develop a relationship with his offspring. If he grasps that opportunity and accepts some measure of responsibility for the child's future, he may enjoy the blessings of the parent-child relationship and make uniquely valuable contributions to the child's development. If he fails to do so, the Federal Constitution will not automatically compel a state to listen to his opinion of where the child's best interests lie." Id.
 {¶ 22} Applying Lehr, in Aaron Jones this court determined that the record was devoid of evidence that the alleged father took any action to establish a relationship with his children; the appellant had no involvement in the older two children's lives and was incarcerated at the time that the third child was declared dependent and neglected. Id. *Page 7 
Further, the appellant made no effort to enter an appearance in the custody action and to establish that a parent-child relationship existed. Id.
 {¶ 23} Unlike Aaron Jones, it appears that, from the record, appellant was incarcerated at the time of My'kavellie's birth through his dismissal from the proceedings. Thus, appellant lacked the opportunity to establish a parent-child relationship with My'kavellie. As set forth above, My'kavellie's natural mother requested that his surname be changed to appellant's; there was no objection and the complaint was amended by interlineation. At no time did appellant deny paternity; in fact, throughout the proceedings appellant, although restricted due to his incarceration at TCI, continued to assert his paternity and even attempted to legally establish parentage by submitting an acknowledgement of paternity (though it proved to be legally deficient as discussed infra.)
 {¶ 24} Upon review, we are troubled by the fact that, despite appellant's repeated attempts to assert his paternity, the trial court dismissed appellant from the action. We are aware that appellant has had prior contacts with the court and LCCS; however, the court's attempt to fast-track the permanent custody action acted to deprive appellant of his due process right to a full hearing on the issue of paternity. Appellant's first assignment of error is well-taken.
 {¶ 25} In appellant's second assignment of error he argues that the trial court erred when it failed to provide appellant his due process right to obtain a judgment on his *Page 8 
affidavit of paternity. R.C. 3111.03 provides that an alleged father may establish parentage as follows:
 {¶ 26} "A) A man is presumed to be the natural father of a child under any of the "following circumstances:
 {¶ 27} "* * *.
 {¶ 28} "(3) An acknowledgment of paternity has been filed pursuant to section 3111.23 or former section 5101.314 of the Revised Code and has not become final under former section 3111.211 or 5101.314 or section2151.232, 3111.25, or 3111.821 of the Revised Code."
 {¶ 29} R.C. 3111.23, acknowledgment of paternity, provides:
 {¶ 30} "The natural mother, the man acknowledging he is the natural father, or the other custodian or guardian of a child, a child support enforcement agency pursuant to section 3111.22 of the Revised Code, a local registrar of vital statistics pursuant to section 3705.091 of the Revised Code, or a hospital staff person pursuant to section 3727.17 of the Revised Code, in person or by mail, may file an acknowledgment of paternity with the office of child support in the department of job and family services, acknowledging that the child is the child of the man who signed the acknowledgment. The acknowledgment of paternity shall be made on the affidavit prepared pursuant to section 3111.31 of the Revised Code, shall be signed by the natural mother and the man acknowledging that he is the natural father, and each signature shall be notarized. The mother and man may sign and have the signature notarized outside of each other's *Page 9 
presence. An acknowledgment shall be sent to the office no later than ten days after it has been signed and notarized. If a person knows a man is presumed under section 3111.03 of the Revised Code to be the father of the child described in this section and that the presumed father is not the man who signed an acknowledgment with respect to the child, the person shall not notarize or file the acknowledgment pursuant to this section."
 {¶ 31} According to R.C. 3111.24 once the child support enforcement agency receives the affidavit:
 {¶ 32} "[T]he office of child support shall examine the acknowledgment to determine whether it is completed correctly. The office shall make the examination no later than five days after the acknowledgment is filed. If the acknowledgment is completed correctly, the office shall comply with division (B) of this section. If the acknowledgment is not completed correctly, the office shall return it to the person or entity that filed it. The person or entity shall have ten days from the date the office sends the acknowledgment back to correct it and return it to the office. The office shall send, along with the acknowledgment, a notice stating what needs to be corrected and the amount of time the person or entity has to make the corrections and return the acknowledgment to the office."
 {¶ 33} In the instant case, according to appellant and the transcript of the November 6, 2006 hearing, appellant's affidavit was sent to the court, LCCS, and *Page 10 
appellant's attorney.[1] The statute requires that the affidavit be sent to the office of child support. Although Lucas County Child Support Enforcement Agency ("LCCSEA") is related to LCCS, they are distinct entities. LCCSEA was not a party to this action and we can find neither case law nor statutory support to impose upon LCCS or the trial court the duty to submit the affidavit to the LCCSEA for review. Accordingly, we find that appellant's second assignment of error is not well-taken.
 {¶ 34} In appellant's third assignment of error, appellant contends that the trial court erred in dismissing appellant as a party because the evidence was insufficient to support a finding that appellant was merely an alleged father. Based on our disposition of appellant's first assignment of error, we find that appellant's third assignment of error is well-taken.
 {¶ 35} Appellant's fourth assignment of error asserts that the trial court violated his constitutional right to free exercise of religion by making genetic testing the sole proof of paternity. Specifically, appellant argues that his Islamic beliefs provide that a denial of one's child, whether voluntary or involuntary, is a sin; thus, taking a genetic test would be a de facto denial of paternity.
 {¶ 36} We agree with appellant that the ability to freely practice one's religious beliefs is fundamental right of all United States citizens. However, in this case the record is devoid of evidence that the trial court, LCCS or appellant's attorney had any *Page 11 
knowledge of the reason for appellant's refusal to submit to genetic testing. For example, at the November 6, 2006 hearing, appellant's counsel stated:
 {¶ 37} "I am not sure where he gets his reluctance to do the genetic testing. I had an opportunity to talk to the CSB attorney who has had Mr. Edwards on previous cases and he has always denied in the past to take genetic testing.
 {¶ 38} "I don't know whether he fears genetic testing for some reason. I just don't understand what his basis is or concern is with this matter."
 {¶ 39} Based on the foregoing, we find that the trial court did not deprive appellant of his right to free exercise of religion. Appellant's fourth assignment of error is not well-taken.
 {¶ 40} In appellant's fifth and final assignment of error he argues that his trial counsel was ineffective by failing to seek an explanation from appellant regarding the basis for his objections to genetic counseling; failing to attend the only planned meeting between appellant and counsel; failing to object to the court's order dismissing appellant as a party; and failing to assist appellant in filing a proper acknowledgement of paternity.
 {¶ 41} "Where the proceeding contemplates the loss of parents' `essential' and `basic' civil rights to raise their children, * * * the test for ineffective assistance of counsel used in criminal cases is equally applicable to actions seeking to force the permanent, involuntary termination of parental custody." In re Heston, (1998), 129 Ohio App.3d 825, 827. Therefore, in order to prevail on a claim of ineffective assistance of counsel, it must be demonstrated that counsel's performance was deficient and resulted in prejudice. *Page 12 Strickland v. Washington (1984), 466 U.S. 668. In order to prove ineffective assistance of counsel, appellant must show (1) that his counsel's performance fell below an objective standard of reasonable representation in some particular respect or respects and (2) that he was so prejudiced by the defect or defects that there exists a reasonable probability that, but for counsel's errors, the result of the proceeding would have been different. State v. Bradley (1989),42 Ohio St.3d 136, paragraphs two and three of the syllabus, followingStrickland.
 {¶ 42} Upon review, we must admit that the performance of appellant's counsel was deficient meeting the first prong under Strickland. Counsel admitted that he received appellant's August 1, 2006 affidavit; counsel failed to advise appellant that the affidavit was deficient or take steps to revise the affidavit. Further, appellant's counsel erroneously informed his client that genetic testing was the only way for him to establish paternity. Appellant's counsel indicated that appellant was vehemently opposed to genetic testing and had been on prior occasions yet counsel never ascertained the basis of appellant's objection.
 {¶ 43} Next, under the second prong of Strickland we must determine whether counsel's deficient performance affected the outcome of the proceeding. We reluctantly agree that it did. Counsel was clearly aware of appellant's desire to acknowledge paternity and failed to assist appellant in doing so. Counsel further failed to object to appellant's dismissal based solely upon his failure to submit to genetic testing. *Page 13 
Appellant's counsel was charged with the responsibility of protecting appellant's due process rights; accordingly, appellant's fifth assignment of error is well-taken.
 {¶ 44} On consideration whereof, the judgment of the Lucas County Court of Common Pleas, Juvenile Division, is reversed as to the court's November 15, 2006 order dismissing appellant as a party to the case. The March 28, 2007 judgment granting LCCS permanent custody is vacated and the matter is remanded for further proceedings consistent with this decision. LCCS is ordered to pay the costs of this appeal pursuant to App.R. 24. Judgment for the clerk's expense incurred in preparation of the record, fees allowed by law, and the fee for filing the appeal is awarded to Lucas County.
JUDGMENT REVERSED.
A certified copy of this entry shall constitute the mandate pursuant to App.R. 27. See, also, 6th Dist.Loc.App.R. 4.
Mark L. Pietrykowski, P.J., Arlene Singer, J., William J. Skow, J. CONCUR.
[1] The affidavit was never filed in the record; LCCS did attach a copy to its appellate brief. *Page 1